# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| JOEL CHRISTOPHER HOLMES, | CASE NO. 3:17-cv-05145-RJB |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| MAGGIE MILLER-STOUT, MIKE DOUGLAS, and KERRY LAWRENCE, | |
| Defendants. | |

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 30. The Court has considered the motion and the remainder of the file herein.

## BACKGROUND

**A. Procedural history**

Plaintiff first filed pleadings, including the initial Complaint, on February 23, 2017. Dkt. 1. The Amended Complaint, Dkt. 21, is the operative complaint.

Defendants filed the Motion for Summary Judgment on October 27, 2017. Dkt. 30. On November 16, 2017, Plaintiff requested—and was given—an extension of time to respond to the motion. Dkts. 34, 35, 36. Plaintiff's request included substantive argument responding to Defendants' motion, so the Court has construed that pleading (Dkt. 35) as a Response to Defendants' motion.

On November 29, 2017, the Court gave Plaintiff *Rand* warnings explaining the risk of dismissal if Plaintiff failed to sufficiently respond to Defendants' motion for summary judgment. Dkt. 36. *See also*, Dkt. 33. On December 11, 2017, Plaintiff filed a "supplementary brief of plaintiff opposing defense motion for summary judgement [*sic*]," which the Court construes as a supplement to Plaintiff's Response. Dkt. 40. *See* Dkt. 35. Defendants filed a Reply on December 13, 2017. Dkt. 37.

**B. Factual background and claims.**

Facts recited herein are agreed or uncontested, except where noted.

This cause of action centers on what occurred while Plaintiff was in Department of Corrections (DOC) custody, from approximately May 2013 until December 4, 2014. Dkt. 31-1. According to Plaintiff's recitation of the facts, on February 7, 2014, Defendant DOC Sargent Mike Douglas threatened Plaintiff with a forced haircut, despite Defendant Douglas' knowledge that doing so would compromise Plaintiff's Rastafarian religious beliefs. Dkt. 21 at 3. Plaintiff states that Defendant Douglas made this threat with authorization from Defendant Kerry Lawrence, DOC Corrections Unit Supervisor, who verbally threatened to "knock out" Plaintiff so that Plaintiff's hair could be cut. *Id*.

Defendant Lawrence recalls a conversation with Plaintiff a few days after the February 7, 2014 incident, on February 10, 2014, where Defendant Lawrence discussed with Plaintiff

1 complaints from "some of the unit custody staff . . . about Holmes's [*sic*] hygiene and the difficulty . . . searching his hair for contraband[.]" Dkt. 31 at 2. Defendant Lawrence states that in that conversation he "stressed that no . . . DOC official would force him [Plaintiff] to cut his hair." *Id*. *See also*, Dkt. 31-1 at 8.

On February 28, 2014, Plaintiff sent to DOC the following grievance message:

> …riot at Stafford Creek. Maybe there will be one here if the South African born Douglas attempts to cut my hair again—or you and Inslee will all lose your jobs. I have had enough—The US SUP CT has accepted a case on the issue . . . [of] prison hair.

*Id*. at 13. Based on the February 28, 2014 grievance, on March 3, 2014, Defendant Lawrence wrote an initial serious infraction report and cited Plaintiff for violating "WAC 506." *Id*. at 12, 13. *See* WAC 137-25-030 ("506—Threatening another with bodily harm or with any offense against any person or property"). Also on March 3, 2014, Defendant Lawrence spoke with Plaintiff about the grievance, including what Defendant Lawrence called a "threat," Dkt. 31 at ¶7, and Plaintiff was placed Plaintiff in administrative segregation pending a disciplinary hearing.

At a disciplinary hearing held on March 10, 2014, the administrative hearing office reduced the "WAC 506" infraction for threatening bodily harm to a "WAC 663" infraction for intimidation. Dkt. 31-1 at 14. *See* WAC 137-25-030 ("663—Using physical force, intimidation, or coercion against any person"). According to the administrative hearing minutes, Plaintiff told the administrative hearing officer that "Sgt Douglas did demand that I cut my hair in front of 30 other inmates. Other officers have also made similar threats." *Id*. The administrative hearing officer reduced the infraction after finding that "[t]here is no evidence of offender threatening staff with bodily harm, however offender did attempt to intimidate staff." *Id*. Plaintiff was released from administrative segregation on March 10, 2014. *See id*.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

While in DOC custody, Plaintiff filed multiple Personal Restraint Petitions (PRPs) to prevent DOC from cutting his hair. The Washington State Court of Appeals granted a preliminary request for relief, but later dismissed the PRP as moot because DOC represented it had no present or future intent to cut Plaintiff's hair. Dkt. 32-1 at 10. The second PRP was dismissed at the outset, *id.* at 32, and similar appeals of the PRPs failed. *Id.* at 51, 66, 68. A letter from Defendant DOC Superintendent Maggie Miller-Stout to Plaintiff written on January 6, 2014, underlines DOC's official position about Plaintiff's haircut. The letter addresses a "situation where an officer conducted a pat search . . . [and] made a comment that your hair was an obstacle to search[,]" which, according to the letter, is an opinion that falls within DOC policy, which allows "the Superintendent [Defendant Miller-Stout] to restrict hair styles that present a security risk." The letter emphasized that "[a]t this time, a directive for your hair to be cut has not been issued, nor is it being considered." *Id.* at 5. The Amended Complaint alleges "connivance" on the part of Defendant Miller-Stout to get rid of Plaintiff's hair. Dkt. 21 at 3.

Plaintiff was released from DOC custody on December 4, 2014, and according to DOC records, Plaintiff was released without a supervision requirement. Dkt. 31-1 at 18, 19. The Amended Complaint alleges that on August 13, 2015, Plaintiff was subjected to a forced haircut by "WA DOC Post-Release Transitional Housing Facility, Pioneer Human Services-PHS-Hudson House." Dkt. 21 at 3 (internal quotations omitted). Plaintiff still resides at the Hudson House. *See* Dkt. 35 at 1.

The Amended Complaint does not allege discrete claims, but Plaintiff brings this case pursuant to 42 U.S.C. §1983 and the Religious Land Use & Institutionalized Persons Act (RLUIPA). The Amended Complaint seeks "financial compensation for WA DOC/PHS [Pioneer Human Services] forced haircuts in violate of my sincere religious beliefs (Rastafarian).

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

Injunctive relief barring any MORE forced haircutting of me[*sic*]." Dkt. 21 at 4 (internal quotations and omitted).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. Any factual issues of controversy must be resolved in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

**A. Sec. 1983 claims for damages.**

    1. <u>Three year statute of limitations.</u>

Plaintiff brings this case pursuant to 42 U.S.C. §1983, so the statute of limitations and coordinate tolling rules are determined with reference to Washington law. *Rose v. Rinaldi*, 654 F.2d 546 (9th Cir. 1981); *Bianchi v. Bellingham Police Department*, 909 F.2d 1316 (1990). RCW 4.16.080(2) provides a three year statute of limitations for injury to the person or rights of another and applies to personal injury cases brought under §1983. *See Rose*, 654 F.2d at 547.

Defendants argue that claims arising out of the February 7, 2014 incident, where Defendant Douglas allegedly ordered Plaintiff to cut his hair, are barred by the applicable three year statute of limitations, because this case was not filed until February 23, 2017. Dkt. 30 at 5. Plaintiff argues that the statute of limitations should run from the date of his release from custody, December 4, 2014, because the "order" by Defendant Douglas to cut Plaintiff's hair "was never (and has never since) been rescinded by WA DOC," so "Plaintiff was theoretically still subject to this demand, until the date of his release from WA DOC" on December 4, 2014. Dkt. 35 at 1.

Plaintiff's ongoing harm theory lacks merit, because it rests solely upon taking as true Plaintiff's impression that Defendant Douglas' February 7, 2014 "order" remained in effect until Plaintiff's release. Nothing in the record, beyond Plaintiff's naked interpretation of the February

7, 2014 conversation with Defendant Douglas, would support this conclusion. Plaintiff does not represent that he was actually forced to cut his hair prior to release, that Defendant Douglas himself reiterated to Plaintiff the "order" on any occasion after February 7, 2014, or that any other DOC staff made similar comments after that date. Plaintiff has also not shown any basis for equitable tolling. The statute of limitations should run from February 7, 2014 incident and therefore bars claims arising out of the conduct after that date. Therefore, the §1983 claim for damages against Defendant Douglas should be dismissed.

The §1983 claim for damages against Defendant Miller-Stout should also be dismissed, because even it is assumed[1] that, as alleged, Defendant Miller-Stout as DOC Superintendent "connived" with other staff to cut Plaintiff's hair, the only fact anywhere in the record that could connect a timeframe to her conduct is the January 6, 2014 letter, written approximately 45 days prior to the presumptive statute of limitations timeframe of February 23, 2014. The §1983 claim for damages against Defendant Miller-Stout should also be dismissed.

2. Section 1983 claims and qualified immunity generally.

There are two elements to §1983 claims: that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. Sec. 1983; *Shah v. Cty. of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986). Only the second element is at issue in this case.

Qualified immunity shields government actors from civil liability under §1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a

---

[1] The Court does not reach the merits of this claim. However, the record shows nothing beyond conclusory allegations of conspiracy, not an agreement or meeting of the minds for the underlying retaliation. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012).

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts evaluate two independent questions when considering qualified immunity: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

3. <u>Sec. 1983 claim against Defendant Lawrence.</u>

The Amended Complaint alleges that constitutional violations occurred when Plaintiff was sent to administrative segregation on March 3, 2014. Dkt. 21 at 3. Plaintiff's Response furthers the theory, arguing that the record points to an administrative segregation sanction imposed on account of the February 28, 2014 grievance. *See* Dkt. 31-1 at 13. The Court joins the parties in construing the §1983 claim against Defendant Lawrence as a First Amendment retaliation claim. *See* Dkt. 30 at 6; Dkt. 35 at 2.

The Court first analyzes whether Defendant Lawrence's conduct violated Plaintiff's First Amendment rights.

      *i.     Violation of constitutional right?*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir.2005) (footnote omitted).

The prima facie showing is sufficient for Plaintiff to proceed on a First Amendment claim for retaliation when evidence is viewed in Plaintiff's favor.

First: Plaintiff was placed in administrative segregation, which is a sanction reasonably viewed as an "adverse action." *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out"). This element is satisfied for purposes of Defendants' motion.

Second: Examining the causation element considers whether the protected conduct was the substantial or motivating factor behind the defendant's conduct. *Brodheim*, 584 F.3d at 1271. The records shows that the February 28, 2014 grievance formed the basis for the "WAC 506" infraction issued by Defendant Lawrence justifying administrative segregation. The evidentiary showing is sufficient for purposes of this motion.

Third: The parties disagree about whether the February 28, 2014 grievance merits constitutional protections. Defendants argue that although inmate grievances are generally protected by the First Amendment, Defendant Lawrence cited Plaintiff because the grievance contained a threat, and filing threatening grievances is not protected conduct. Defendants' logic overlooks *Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995 (overruled on other grounds). Although the balancing analysis used in *Bradley* has been overruled, the holding in *Bradley* is still good law. *Brodheim v. Cry*, 584 F.3d 1262, 1272 (9th Cir. 2009). *Bradley* held:

> We leave open the possibility that there may be situations in which prison officials may properly discipline inmates for criminal threats contained in written grievances. Today we hold only that prison officials may not punish an inmate merely for using "hostile, sexual, abusive or threatening" language in a written grievance.

*Bradley*, 64 F.3d at 1281-82. *Bradley* draws a distinction in the context of inmates' written grievances between general threats, which are protected speech, and criminal threats, which are not. Applied here, Defendants do not argue that the February 28, 2014 grievance was a criminal threat, nor would such an argument find support either in the language of the grievance itself or in the administrative hearing record. The administrative hearing record reflects that the hearing

officer reduced the "WAC 506" infraction for threatening conduct to a "WAC 663" infraction for intimidation after finding "no evidence of offender threatening staff with bodily harm[.]" The February 28, 2014 grievance made only a general, not criminal, threat. The showing for this element is sufficient for purposes of Defendants' motion.

<u>Fourth</u>: When considering whether a sanction chilled First Amendment conduct, Plaintiff need not show that *his* speech was chilled, but only that, by an objective standard, "the adverse action. . . would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (internal quotations and citations omitted). This element is satisfied for purposes of this motion, under circumstances where the record suggests that Plaintiff served eight days in administrative segregation for the content of the February 28, 2014 grievance.

<u>Fifth</u>: Whether the challenged action reasonably advanced a legitimate correctional goal is an element considering four factors:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." . . . [C]ourts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready alternatives" available to the prison for achieving the governmental objectives.

*Shaw v. Murphy*, 532 U.S. 223, 228 (2001), citing to *Turner v. Safley*, 482 U.S. 78 (1987) 532 U.S. at 228.

The connection between Defendants' legitimate correctional goals and the prison regulation at issue, "WAC 506," which prohibits threatening another with bodily harm, is readily apparent, because threats to officer safety impedes their ability to serve and protect inmates. This factor thus arguably favors Defendants, except that the administrative hearing officer found no factual basis to cite Plaintiff for threatening conduct.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10

The next factor, alternative means for Plaintiff exercise the constitutional right, does not favor Defendants, because there is no showing of other legitimate means available to Plaintiff to air grievances about treatment by DOC staff in writing, other than the existing grievance system.

Considering the impact accommodation will have on guards and other inmates, the record is scant, but this factor does not favor Defendants. As noted in *Brodheim*, "[a] prisoner's statement in a grievance need not have any more impact on prison security . . . than the prisoner's unexpressed thoughts." *Brodheim*, 584 F.3d at 1273 (internal quotations and citations omitted). "It takes little imagination to structure a grievance system . . . that would make a prisoner's statements . . . invisible to all those involved in the daily operations of the prison, alleviating any security concern." *Id*.

Finally, on the absence of ready alternatives to Defendants to achieve their penological interests, the record is thin, but even assuming that Defendants perceived a threat to DOC staff, there is no showing that a lesser sanction, e.g., a warning, would not have achieved the same or similar outcome.

For all five elements, the prima facie showing is sufficient for Plaintiff to proceed on a First Amendment claim for retaliation against Defendant Lawrence. The next question is whether Defendant Lawrence violated clearly established law.

    *ii.  Violation of clearly established law?*

As a starting point, the Ninth Circuit has emphasized its recognition that "the prohibition against retaliatory punishment is clearly established law in the Ninth Circuit, for qualified immunity purposes." *Rhodes* 408 F.3d 559, 569 (9th Cir. 2005). Also clearly established as of March 3, 2014, when Plaintiff was placed in administrative segregation, was inmates' First Amendment right to file grievances, including content threatening civil lawsuits. *Turner*, 48 U.S.

at 84; *Entler v. Gregoire*, 872 F.3d 1031, 1041 (9th Cir. 2017). Finally, *Bradley*, a Ninth Circuit case issued in 1995, clearly established that "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive, or threatening' language in a written grievance." *Bradley*, 64 F.3d at 1281-82. Explicitly left open by *Bradley* was "the possibility that there may be situations in which prison officials may properly discipline inmates for criminal threats contained in written grievances." *Id*. Also impliedly unanswered by *Bradley* is whether punishment could be imposed for verbal, not written, threats. *See id*.

Applied here, on March 3, 2014, the day that Defendant Lawrence cited Plaintiff for an infraction under "WAC 506" for threatening conduct, it was clearly established that a general, non-criminal threat, written in the context of an inmate grievance, was not a legitimate basis to justify administrative segregation. Therefore, qualified immunity does not shield Defendant Lawrence from liability from Plaintiff's §1983 First Amendment retaliation claim.

In summary, the §1983 claims for damages against Defendant Douglas and Defendant Miller-Stout are barred by the statute of limitations and should be dismissed. Summary judgment should be granted in favor of Defendant Douglas and Defendant Miller-Stout for all §1983 claims for damages. Summary judgment should be denied as to the §1983 retaliation claim for damages against Defendant Lawrence.

**B. RLUIPA claims for damages.**

The Amended Complaint makes no explicit reference to RLUIPA, *see* Dkt. 21, but from Plaintiff's other pleadings, it is apparent that Plaintiff has construed his pleadings to allege a RLUIPA claim for damages. *See, e.g.,* Dkt. 35 at 3. Defendants' motion so construes the pleadings. Dkt. 30 at 9, 10.

To the extent that the Amended Complaint seeks damages under RLUIPA, such claims cannot proceed. Plaintiff cannot obtain damages against any defendant acting in either their official or individual capacity. *See See Sossamon v. Texas,* 563 U.S. 277, 285-86 (2011) (Eleventh Amendment immunity shields state actors acting in official capacity); *Holley v. California Dep't of Corr.,* 599 F.3d 1108, 1114 (9th Cir.2010) (same); *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir.2014) (RLUIPA does not authorize size against state actors acting in their individual capacity).

Summary judgment in favor of Defendants should be granted as to all claims seeking damages under RLUIPA.

**C. Claims for injunctive relief under §1983 and RLUIPA.**

Plaintiff seeks injunctive relief, although it is unclear whether Plaintiff seeks injunctive relief under §1983 or RLUIPA. The distinction in this case is of no importance, because under either statutory scheme, a claim for injunctive relief is moot. Plaintiff is no longer in DOC custody, and none of the named defendants controls terms of Plaintiff's housing at Pioneer Human Services, where Plaintiff currently resides. Plaintiff argues that he needs injunctive relief against Defendants because he is likely to reoffend and will again soon be in DOC custody, an argument that is both baseless and premature[2].

Summary judgment in favor of Defendants should be granted as to all claims seeking injunctive relief.

---

[2] The argument is also pessimistic. The Court—and the entire justice system—endeavors to reduce recidivism.

THEREFORE, it is HEREBY ORDERED:

Defendants' Motion for Summary Judgment (Dkt. 30) is GRANTED IN PART and DENIED IN PART as follows:

The 42 U.S.C. §1983 First Amendment retaliation claim for damages may proceed against Defendant Kerry Lawrence. All other claims against all other defendants are HEREBY DISMISSED.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 21st day of December, 2017.

*[signature]*

ROBERT J. BRYAN
United States District Judge